**NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS,**
Plaintiff,

v.

**DAIMLERCHRYSLER MOTORS CORPORATION, Defendant.**

**Civil Action No. 99–3896 (MLC).**

United States District Court,
D. New Jersey.

Dec. 27, 1999.

**496**

Marvin J. Brauth, Wilentz, Goldman & Spritzer, Woodbridge, NJ, for Plaintiff.

Thomas R. Curtin, Graham, Curtin & Sheridan, P.C., Morristown, NJ, Robert Cultice, Hale & Dorr, LLP, Boston, MA, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on plaintiff's application for a preliminary injunction and defendant's motion for judgment on the pleadings. For the reasons stated, the Court decides the motions as follows: (1) plaintiff's application for a preliminary injunction is granted, and (2) defendant's motion for judgment on the pleadings is denied as to plaintiff's claim premised on the New Jersey Franchise Practices Act and granted as to plaintiff's claim premised on the Automotive Dealers Day in Court Act.

The Court will file an order after determining the size of the bond required by Federal Rule of Civil Procedure 65(c) and whether the order should be made final, thereby obviating the need for a bond. The Court issues an accompanying Order to Show Cause directing the parties to address those two subjects.

### *BACKGROUND*

The parties generally do not dispute the facts underlying this matter. Plaintiff New Jersey Coalition of Automotive Retailers ("NJCAR") is a trade association whose members consist of approximately 650 automotive retailers throughout the state of New Jersey. (Verif.Compl.¶ 1.) Approximately 150 members of NJCAR currently hold franchises to sell motor vehicles manufactured by defendant DaimlerChrysler Motors Corp. ("DaimlerChrysler"). (*Id.* ¶ 3.) The relationship between motor vehicle manufacturers such as DaimlerChrysler and their retailers is governed by the New Jersey Franchise Practices Act (the "Act" or "NJFPA"), N.J. Stat. Ann. ("N.J.S.A.") § 56:10–1, *et seq.*

In addition to selling motor vehicles, automotive retailers are obliged, pursuant to written franchise agreements with motor vehicle manufactures, to provide warranty service on the vehicles that they sell. (Verif.Compl.¶ 6.) Such warranty service typically includes both labor and parts. (*Id.*) The NJFPA requires manufacturers to reimburse a dealer at retail prices for the parts sold and the labor performed by a dealer under the manufacturer's warranty provided that the dealer's prevailing retail price is reasonable. N.J.S.A. § 56:10–15. DaimlerChrysler, however, has a warranty parts reimbursement schedule whereby its retailers receive only a 30 to 40 percent markup on warranty parts. (Verif.Compl.¶ 11.)

The New Jersey Legislature amended the Franchise Practices Act, with the amendment effective on March 12, 1999, to clarify the manufacturer's obligation with respect to the reimbursement for parts used to perform warranty repairs. N.J.S.A. § 56:10–15(d) states in pertinent part:

> For the purposes of this section, the "prevailing retail price" charged by a motor vehicle franchisee for parts means the price paid by the motor vehicle franchisee for those parts, including all shipping and other charges, multiplied by the sum of 1.0 and the franchisee's average percentage markup over the price paid by the motor vehicle franchisee for parts purchased by the motor vehicle franchisee from the motor vehicle franchisor and sold at retail. The motor vehicle franchisee may establish average

percentage markup under this section by submitting to the motor vehicle franchisor 100 sequential customer paid service repair orders or 90 days of customer paid service repair orders, whichever is less, covering repairs made no more than 180 days before the submission, and declaring what the average percentage markup is. The average percentage markup so declared shall go into effect 30 days following the declaration subject to audit of the submitted repair orders by the motor vehicle franchisor and adjustment of the average percentage markup based on that audit.... No motor vehicle franchisor shall require a motor vehicle franchisee to establish average percentage markup by a methodology, or by requiring information, that is unduly burdensome or time consuming to provide, including, but not limited to, part by part or transaction by transaction calculations....

*Id.*

After the effective date of the March 12, 1999 legislation, several NJCAR members requested reimbursement from DaimlerChrysler for warranty parts at prevailing retail prices. (Verif.Compl.¶ 14.) DaimlerChrysler responded with a letter dated May 27, 1999, which threatened imposition of a $400 per vehicle charge on all DaimlerChrysler vehicles sold in New Jersey if even one retailer sought an increased compensation rate. (*Id.* ¶ 15.) The letter provides in full:

This letter responds to your letter requesting warranty reimbursement for parts at retail. If DaimlerChrysler Motors Corporation pays any dealer an increased compensation rate for parts, pursuant to the dealer's request under New Jersey Law, then DaimlerChrysler will initiate the following action:

DaimlerChrysler Motors Corporation will discontinue using the current 30% and 40% warranty parts markup rates effective with warranty repairs on and after June 12, 1999. Payment for parts used in warranty work by New Jersey

dealers will automatically be made at DaimlerChrysler Motor Corporation's published suggested retail parts price, except where valid requests are made by individual dealers pursuant to New Jersey law. Further information concerning payment and reimbursement details will be contained in a subsequent warranty bulletin.

In order to recover these increased costs, DaimlerChrysler Motors Corporation will institute a $400 surcharge on the invoice for all vehicles sold to and shipped to New Jersey dealers, or other equivalent measures. The additional charges will go into effect July 1, 1999.

In the event there are no requests by any dealership in New Jersey for retail rate reimbursement, then DaimlerChrysler Motors Corporation will not institute the above action.

(Verif. Compl., Ex. B: Letter from R.D. Ciesta dated 5–27–99.) M.J. MacDonald, a representative of DaimlerChrysler, transmitted a nearly identical message to all DaimlerChrysler New Jersey retailers via electronic mail on May 26, 1999. (*Id.*, Ex C: email message from M.J. MacDonald dated 5–26–99.)

It is undisputed that those retailers who had requested reimbursement from DaimlerChrysler for warranty parts at prevailing prices withdrew their requests. (*Id.* ¶ 19.) DaimlerChrysler transmitted another electronic mail message to retailers on June 3, 1999 stating:

At the present time, DaimlerChrysler Corporation has no requests pending for warranty parts reimbursement at retail. Since DaimlerChrysler will not incur any incremental costs, the $400 surcharge described in M.J. MacDonald's May 26, 1999 dmail [*sic*], will be postponed.

However, if DaimlerChrysler receives another request and begins to incur costs because of state law requirements, appropriate measures as well as parts

reimbursement will go into effect all New Jersey dealers [*sic*].

(*Id.*, Ex D: email message dated 6–3–99 from R.M. Fisher.)

NJCAR alleges that DaimlerChrysler is interfering with the rights of NJCAR members to secure the rights afforded them under the New Jersey Franchise Practices Act by threatening to impose a $400 penalty in response to any efforts to exercise those rights. (*Id.* ¶ 22.) NJCAR asks this Court: (1) to declare and adjudge that DaimlerChrysler's imposition of the proposed $400 per vehicle penalty is unlawful, and (2) to enjoin DaimlerChrysler from imposing any penalty upon its retailers or intimidating its retailers from making any requests for reimbursement for warranty parts at prevailing retail prices in accordance with N.J.S.A. § 56:10–15. (*Id.* Relief Requested.)

NJCAR argues that DaimlerChrysler retailers will be immediately and irreparably harmed unless the Court enjoins DaimlerChrysler from imposing, or threatening to impose, the $400 per vehicle charge. (Pl.'s Br. in Supp. at 9.) According to NJCAR, the proposed $400 surcharge cannot be justified as a response to the increased costs of doing business in New Jersey created by the Act and instead, constitutes a penalty designed to intimidate dealers. (*Id.* at 19.) NJCAR asserts that it is likely to succeed on the merits of the action because intimidation by a manufacturer aimed at causing a retailer to abandon the rights conferred upon it under the Franchise Practices Act in itself violates the Act.( *Id.* at 18.)

DaimlerChrysler argues that NJCAR has failed to establish any legal basis for injunctive relief. (Def.'s Br. in Opp'n at 6.) First, DaimlerChrysler asserts that it has not violated the Franchise Practices Act because (1) the use of a wholesale price increase to recover costs incurred in complying with the Franchises Practices Act is lawful, (*id.* at 9), and (2) DaimlerChrysler has agreed to honor all properly supported requests for reimbursement in accordance

with § 56:10–15 of the Act. (*Id.* at 14.) In addition, DaimlerChrysler argues that NJCAR lacks standing to sue on behalf of DaimlerChrysler dealers. (*Id.* at 17–20.)

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. We will begin by addressing NJCAR's application for a preliminary injunction.

## DISCUSSION

### I. NJCAR's Application for a Preliminary Injunction

#### 1. Preliminary Injunction Standard

■ The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *United States v. City of Philadelphia*, 644 F.2d 187, 191 n. 1 (3d Cir. 1980)). In ruling on a motion for a preliminary injunction, this Court must consider whether: (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of the relief; (3) granting preliminary relief will result in even greater harm to the nonmoving party; and (4) granting the preliminary relief will be in the public interest. *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (citations and quotation omitted). Furthermore, "[t]he injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT & T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994). The Court will address these criteria seriatim.

#### 2. Likelihood Of Success On The Merits

The movant must demonstrate a "reasonable probability of eventual success in the litigation" for an injunction to issue. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir.1982).

It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits.

*Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir.1975).

■ The United States Court of Appeals for the Third Circuit unequivocally declared that the New Jersey Franchise Practices Act does not preclude a manufacturer from recovering the additional cost of reimbursing warranty parts at higher rates through an increase in the wholesale price of its vehicles.[1] *Liberty Lincoln–Mercury v. Ford Motor Comp.*, 134 F.3d 557, 564–65 (3d Cir.1998); *see also Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050, 1055 (1st Cir.1995) (in regard to a similar Maine statute). The issue before this Court, however, is whether a manufacturer may threaten to impose a $400 wholesale price increase on its retailers if they attempt to assert their statutory right to reimbursement at prevailing market prices.

■ DaimlerChrysler's threat to impose a $400 wholesale price increase appears at this juncture to reveal, at the very least, a disinclination to comply with the statute. The plain language of the NJFPA provides that a motor vehicle manufacturer must reimburse a dealer for warranty parts at the prevailing retail price charged by the dealer for parts used in non-warranty work. N.J.S.A. § 56:10–15(a). A representative of DaimlerChrysler in a letter to retailers expressed displeasure "when legislators attempt to manage our company."

(Verif.Compl. Ex. A.) We note, however, that the New Jersey Legislature duly enacted a law regulating the reimbursement of warranty work, and DaimlerChrysler's displeasure does not justify noncompliance.

DaimlerChrysler has clearly threatened its dealers with monetary harm if they attempt to assert their right to appropriate reimbursement. DaimlerChrysler did not inform its dealers that DaimlerChrysler would adopt the system required by the NJFPA and end its illegal use of reimbursing only at a set 30–40 percent markup. Instead, DaimlerChrysler stated that it would only end this illegal practice under the following conditions: (1) a request by a dealer for reimbursement at the prevailing market rate required by the statute, and (2) a resulting imposition by DaimlerChrysler of $400 per vehicle on all vehicles sold in the state.

We must now examine the nature of DaimlerChrysler's threat. DaimlerChrysler has not provided the Court with any evidence suggesting that the $400 wholesale price increase was related to its increased costs.[2] In contrast, NJCAR has provided evidence suggesting that the average retail parts markup by dealers is 70 percent. (Aff. of Elliot J. Desanto dated 8–20–99 ¶ 4.) In *Acadia*, the wholesale price imposed by the Ford Motor Company ("Ford") to recoup the increased costs of reimbursing warranty parts caused by a change from a markup of 30–40 percent, similar to the rate used by DaimlerChrysler, to a retail rate markup of 63 percent was only $160. 44 F.3d at 1054. This considerably lower wholesale price increase suggests that the $400 increase threatened by DaimlerChrysler exceeded

---

**1.** We note parenthetically that a manufacturer may be liable under the Robinson–Patman Act, 15 U.S.C. § 13(a), if the additional wholesale price increase on New Jersey vehicles is not reasonably related to the additional cost of selling vehicles in the state. *See Acadia*, 44 F.3d at 1059.

**2.** At oral argument, counsel for DaimlerChrysler stated that the $400 wholesale price increase may have been based on an earlier

demand by a retailer for reimbursement at a 130 percent markup. We note, however, that DaimlerChrysler is not bound by an unreasonable markup requested by a retailer. *See* N.J.S.A. § 56:10–15 (a manufacturer is not required to reimburse a dealer where the claimed prevailing retail price is unreasonable when compared with that of other dealers in the area).

the amount needed to compensate for increased costs and instead, constituted a penalty.

In addition, NJCAR has noted that Ford informed its dealers in 1999 that the total cost per vehicle added by the inclusion of a warranty is $400–$700. (Pl.'s Br. in Supp. at 19; *id.*, Ex. A.) The Court has no reason to believe that the costs added by DaimlerChrysler's warranties are significantly different. The markup for parts used by retailers is only a portion of the total cost added by a warranty. The cost of reimbursing dealers at a higher markup for parts than at the prior rate of 30–40 percent is obviously even smaller. In light of Ford's announcement, the increase caused by reimbursing retailers at the required statutory rate, instead of at 30–40 percent markup, seems highly unlikely, at least at this juncture and without opposing evidence submitted by DaimlerChrysler, to approach $400.[3]

Accordingly, we find that NJCAR is likely to establish that DaimlerChrysler's threat of imposing a $400 wholesale price increase was designed to intimidate dealers from exercising their statutory rights. We agree with NJCAR that such behavior by a manufacturer violates the NJFPA. In *Liberty Lincoln-Mercury*, the Third Circuit held that the manufacturer violated the NJFPA by denying the retailer reimbursement at the prevailing rate. 134 F.3d at 566. Here, DaimlerChrysler's threat of a $400 penalty, combined with its present reimbursement at only a 30–40 percent markup, also effectively denies retailers reimbursement at the prevailing rate. *Cf.* Black's Law Dictionary 1480 (6th ed.1990) (noting that a threat may take away from the recipient's acts "that free and voluntary action which alone constitutes consent" and may restrain the recipient's freedom of action). We make this ruling in light of our awareness that the

NJFPA is a remedial statute intended to equalize the disparity of bargaining power in franchisor-franchisee relations and must be construed broadly to give effect to its legislative purpose. Liberty Lincoln, 134 F.3d at 566 (citations omitted).

### 3. Irreparable Harm

■ Generally, a movant "cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money," *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.1979), but "[t]he fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury." *United Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir.1979). In the Third Circuit, the unsatisfiability of a money judgment may constitute irreparable harm in extraordinary cases. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir.1990).

In light of these principles, we find that NJCAR has demonstrated that it will be immediately and irreparably harmed without the issuance of a preliminary injunction. DaimlerChrysler is intimidating dealers into refraining from exercising their rights under the NJFPA. The loss of the dealers' statutory rights cannot be recovered through a money judgment.

### 4. Harm To The Non–Moving Party

We must also consider the possibility of harm to the nonmoving party from the grant of injunctive relief. *See Oburn*, 521 F.2d at 152; *Delaware River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 924 (3d Cir.1974) ("We believe that when considerable injury will result from either the grant or denial of a preliminary injunction, these factors to some extent cancel each other.").

The Court finds at this juncture that DaimlerChrysler will not suffer apprecia-

---

**3.** We note that DaimlerChrysler's threat to impose the $400 per vehicle charge appears to have succeeded. It is undisputed that after DaimlerChrysler's letter, those retailers who had requested reimbursement from Daimler-Chrysler for warranty parts at prevailing prices withdrew those requests. (Verif.Compl.¶ 19.)

ble harm from the granting of a preliminary injunction. DaimlerChrysler argues that the issuance of the preliminary injunction will enjoin DaimlerChrysler from lawfully increasing the wholesale prices of its vehicles. (Def.'s Br. in Opp'n at 27.) This requested injunction, however, only prevents DaimlerChrysler from threatening to impose a penalty on dealers who assert their rights under the NJFPA. Under the clear standard set by the Third Circuit in *Liberty Lincoln-Mercury*, DaimlerChrysler may seek to recover any additional costs created by its compliance with the NJFPA through a wholesale price increase in line with the requirements of the Robinson–Patman Act.[4]

### 5. The Public Interest

Finally, the Court must consider the public interest. *AT & T Co.*, 42 F.3d at 1427 n. 8 (stating that "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff").

The New Jersey Legislature sought to ensure that warranty customers received the same service as retail customers and that warranty work be performed according to generally acceptable standards. Legislative Statement, L.1977, c. 84, § 3,

4. As explained *infra*, the Court will consider further argument on the possible extent of harm to DaimlerChrysler when the parties brief the issue of the amount of the bond to be posted by NJCAR pursuant to Federal Rule of Civil Procedure 65(c).

5. We will briefly address DaimlerChrysler's argument that NJCAR lacks standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The first prong is satisfied because members of NJCAR would have

Assembly No.1956 (May 24, 1976). We therefore find that the public interest expressed by the legislature when enacting the NJFPA, (*id.*), supports the granting of a preliminary injunction enjoining DaimlerChrysler from interfering with a dealer's assertion of its rights under the statute.

## II. DaimlerChrysler's Motion for Judgment on the Pleadings

Our decision granting NJCAR's application for a preliminary injunction renders moot DaimlerChrysler's motion for judgment on the pleadings as to NJCAR's claims under the NJFPA.[5] Although barely mentioned in its Complaint, NJCAR also asserts that the Complaint alleges a claim under the Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. § 1222. We will therefore consider DaimlerChrysler's motion for judgment on the pleadings as to the ADDCA claim.

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." While the timing of a Rule 12(c) motion differs from a motion to dismiss pursuant to Rule 12(b), a court should apply the same legal standards to both types of motions. *Turbe v. Government of*

standing to bring this claim. *See Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Our decision granting the preliminary injunction application would not change if the case had been brought by an individual dealer.

The second prong is satisfied because NJCAR is a trade association, made up of New Jersey motor vehicle retailers, and "routinely takes action on behalf of its members in areas of common interest, including participation in legislative and judicial proceedings." (Verif.Compl.¶ 4.) Accordingly, the interests of dealers in asserting their statutory rights under the NJFPA is germane to NJCAR's purpose. Finally, the third prong is met as the participation of individual members is not required in this action for injunctive relief. *See Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

*Virgin Islands,* 938 F.2d 427, 428 (3rd Cir.1991).

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief." *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986) (citations omitted). Further, all reasonable inferences that can be drawn from the plaintiff's allegations "must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987) (citations omitted). This Court may not dismiss a complaint unless the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

 Under the ADDCA, a manufacturer must "act in good faith in performing or complying with any of the terms or provisions of the franchise...." 15 U.S.C. § 1222. NJCAR's ADDCA claim fails because NJCAR has not alleged that DaimlerChrysler did not act in good faith in regard to a specific term of the franchise. NJCAR argues that the requirements of the NJFPA became part of the franchise agreement. (Pl.'s Br. in Opp'n at 6.) Like the district court in *Acadia,* we are not persuaded that state law has been incorporated into franchise agreements for purposes of the ADDCA. *See Acadia Motors, Inc. v. Ford Motor Comp.,* 844 F.Supp. 819, 831 (D.Maine.1994), *aff'd on other grounds, rev'd on other grounds,* 44 F.3d 1050, 1055 (1st Cir.1995). Accordingly, we find that the Complaint fails to state a claim under the ADDCA and will grant DaimlerChrysler's motion for judgment on the pleadings as to this claim.

## III. Conclusion

The Court has taken the following actions herein: (1) granted NJCAR's application for a preliminary injunction; (2) denied DaimlerChrysler's motion for judgment on the pleadings as to NJCAR's claim under the NJFPA; and (3) granted DaimlerChrysler's motion for judgment on the pleadings as to NJCAR's claim under the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1222. The Court will file an order after determining the size of the bond required by Federal Rule of Civil Procedure 65(c) and whether the order should be made final, thereby obviating the need for a bond. The Court issues an accompanying Order to Show Cause directing the parties to address those two subjects.