**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1051-22

NEW JERSEY COALITION OF
AUTOMOTIVE RETAILERS,
INC., a non-profit New Jersey
Corporation,

     Plaintiff-Appellant,

v.

FORD MOTOR COMPANY,
d/b/a LINCOLN MOTOR
COMPANY,

     Defendant-Respondent.

_____

Argued March 6, 2024 – Decided April 4, 2024

Before Judges Firko, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0234-20.

W. Kirby Bissell (Bass Sox Mercer) of the Florida bar, admitted pro hac vice, argued the cause for appellant (Genova Burns, LLC, Jason T. Allen (Bass Sox Mercer) of the Florida bar, admitted pro hac vice, and W. Kirby Bissell, attorneys; Jennifer Borek, Jason T. Allen, and W. Kirby Bissell, of counsel on the briefs).

Robert M. Palumbos (Duane Morris LLP) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Duane Morris, LLP, and Campbell Conroy & O'Neil, PC, attorneys; Robert M. Palumbos, Andrew R. Sperl, Leah Ariel Mintz, William Joseph Conroy, and Emily Jo Rogers, of counsel and on the brief).

PER CURIAM

Plaintiff, New Jersey Coalition of Automotive Retailers, Inc. (NJCAR), appeals from October 21, 2022 Law Division orders granting defendant Ford Motor Company's (Ford) motion for summary judgment and denying plaintiff's motion for summary judgment. NJCAR brought an action against Ford seeking declaratory and injunctive relief, alleging Ford's Lincoln Commitment Program (LCP) violates a provision of the New Jersey Franchise Practices Act (NJFPA or Act), N.J.S.A. 56:10-1 to 56:10-15. The trial court found NJCAR lacked standing under the Act to bring the lawsuit and, as a result, did not address the remainder of the substantive arguments in the summary judgement motion record. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we conclude NJCAR has associational standing to bring the action. We therefore reverse and remand for the trial court to address the summary judgment motions on the merits.

A-1051-22

We discern the following pertinent facts and procedural history from the record. NJCAR is not an automotive dealership. Rather, it is a trade association whose members are franchised new motor vehicle dealerships in New Jersey. NJCAR provides education, training, and advocacy services to its members. Some of its members are Lincoln dealerships.

The LCP assists dealerships with the cost of implementing various customer amenities, such as loaner vehicles and free car washes. Ford's Lincoln Operations Manager explained, "Ford created the [LCP] as an avenue to compensate those dealers that wished to participate in undertaking those actions and incurring those expenses, in the form of providing a payment to the dealer on new vehicle sales to retail customers to help offset the costs of participation."

In January 2020, NJCAR filed a complaint against Ford, alleging the LCP violated N.J.S.A. 56:10-7.4(h)[1] because Ford's LCP payments "result[] in

---

[1] N.J.S.A. 56:10-7.4 reads in pertinent part:

> It shall be a violation of [the NJFPA] for any motor vehicle franchisor, directly or indirectly, through any officer, agent or employee, to engage in any of the following practices . . .

vehicle price differentials." NJCAR does not claim it has suffered any damages from the LCP. Rather, it seeks declaratory and injunctive relief to vindicate the rights of dealership members subject to the LCP.

In December 2021, both parties filed cross-motions for summary judgment. On October 21, 2022, the trial court held a hearing after which it denied NJCAR's summary judgment motion and granted summary judgment in favor of Ford. The trial court issued an oral ruling, explaining in pertinent part:

> The [c]ourt is not going to address every substantive argument made by both sides in the cross-motion for summary judgment, as the [c]ourt finds fundamentally that there is a lack of standing in this case because of the clear provisions of the [NJFPA]. . . .

This appeal follows. NJCAR contends it has associational standing to raise its members' claims under the NJFPA and the trial court erred by analyzing

---

(h) [t]o fail or refuse to sell or offer to sell to all motor vehicle franchisees in a line make every motor vehicle sold or offered for sale to any motor vehicle franchisee of the same line make, or to fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus, and on reasonable, good faith and non-discriminatory allocation and availability terms.

statutory standing rather than associational standing. NJCAR also argues it is entitled to summary judgment because "Ford's LCP payments to New Jersey Lincoln dealers create bonus differentials on comparably equipped new motor vehicles because not all New Jersey Lincoln dealers receive the same percentage of [the Manufacturer's Suggested Retail Price] as an LCP Payment."

## II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. We review decisions granting summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A grant of summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party is entitled to judgment "as a matter of law." Rule 4:46-2(c). We therefore "must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Samolyk, 251 N.J. at 78 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

With respect to the issue of standing, in O'Shea v. N.J. Schs. Const. Corp., we explained:

> Standing is an aspect of justiciability. Flast v. Cohen, 392 U.S. 83, 98-99, 101 (1968). While we do not

render advisory opinions or function in the abstract, our courts have historically taken a liberal approach to the issue of standing. See Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101 (1971). Standing may be found as long as the parties seeking relief have a sufficient personal stake in the controversy to assure adverseness and the controversy is capable of resolution by the courts. Id. at 103-04. Our Supreme Court has recognized the standing of associations to litigate on behalf of their constituencies, id. at 106. . . .

[388 N.J. Super. 312, 318 (App. Div. 2006).]

In N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, we explained when and in what circumstances "[a]n association may have standing to seek judicial relief in its own right or on behalf of its members." 425 N.J. Super. 615, 627 (App. Div. 2012). Specifically, "[t]o establish that it has standing, 'an association must demonstrate that its members would have standing to sue; the interests its seeks to maintain are germane to the purposes of the organization; and neither the claim asserted nor the relief requested requires individual participation by the association's members.'" Id. at 627-28 (quoting Med. Soc'y of N.J. v. AmeriHealth, HMO, Inc., 376 N.J. Super. 48, 55 n. 2 (App. Div. 2005) (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977))).

III.

We next apply these associational standing elements to the matter before us. With respect to the first prong—whether the association's members would

have standing to bring an action under the NJFPA in their own right—we note the parties dispute whether NJCAR's members have suffered injury. Although we express no opinion on whether summary judgment ultimately should be granted for either party, we are satisfied NJCAR is not seeking a mere "advisory opinion." Rather, there appears to be a justiciable controversy so that individual NJCAR members would have standing to bring an action under the NJFPA. See O'Shea, 388 N.J. Super. at 318 ("Plaintiffs are not seeking an advisory opinion, but in fact have placed before the court a sharply-focused issue in which the organization's constituent members have a personal stake. The issue has been presented in an adversarial context, and is capable of judicial resolution.").

With respect to prong two of the associational standing test, we conclude that proper enforcement of the NJFPA is germane to NJCAR's purpose, which includes advocating on behalf of its members and promoting public policies to ensure a competitive and fair marketplace.

As to the third prong of the associational standing test, we conclude this litigation does not require participation of individual members because NJCAR seeks only declaratory and injunctive relief, not damages based on the alleged violation of the statute. In Hunt, the United States Supreme Court explained:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members

depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

[432 U.S. at 343 (quoting Warth v. Seldin, 422 U.S. 490, 515 (1975)).]

In sum, NJCAR meets all three prongs of the test for associational standing.

IV.

We next address defendant's argument the text of the NJFPA forecloses an association from bringing an action. The Act provides in relevant part:

[a]ny franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.

[N.J.S.A. 56:10-10.]

The Act defines a "[f]ranchisee" as "a person to whom a franchise is offered or granted." N.J.S.A. 56:10-3(d).

Defendant is correct the Act does not expressly authorize an association to bring an action on behalf of its members who are franchisees. But nor does the Act explicitly preclude associational standing. In view of New Jersey's "liberal" standing jurisprudence when there is real dispute between parties that have a real interest, see O'Shea, 388 N.J. Super. at 318, we decline to apply the "canon of statutory construction, expressio unius est exclusio alterius— expression of one thing suggests the exclusion of another left unmentioned." DiProspero v. Penn, 183 N.J. 477, 495 (2005) (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004)).

We add that in N.J. Coal. of Auto. Retailers v. DaimlerChrysler Motors Corp., NJCAR—the same plaintiff as in the matter before us—alleged "DaimlerChrysler [was] interfering with the rights of NJCAR members to secure the rights afforded them under the [NJFPA]. . . ." 107 F.Supp.2d 495, 498 (D.N.J. 1999). Among other arguments, DaimlerChrysler argued NJCAR lacked standing to sue on behalf of the dealers. Ibid.

The district court addressed the associational standing argument in a footnote, explaining:

> The first prong [of associational standing] is satisfied because members of NJCAR would have standing to bring this claim. Our decision granting the preliminary

injection application would not change if the case had been brought by an individual dealer.

The second prong is satisfied because NJCAR is a trade association, made up of New Jersey motor vehicle retailers, and "routinely takes action on behalf of its members in areas of common interest, including participation in legislative and judicial proceedings." Accordingly, the interests of dealers in asserting their statutory rights under the NJFPA is germane to NJCAR's purpose. Finally, the third prong is met as the participation of individual members is not required in this action for injunctive relief. See Warth v. Seldin, 422 U.S. 490, 515 (1975).

[Id. at 501 n.5 (internal citation omitted).]

While the district court's published opinion is not binding on us, we find it to be

persuasive on the standing question.

Finally, with respect to standing, we address defendant's argument that:

NJCAR cannot have it both ways. It cannot both rely on the standing of its members to claim associational standing but then deny Ford the opportunity to assert defenses specific to those members. If one of NJCAR's Lincoln-affiliated members had brought identical claims against Ford in a stand-alone lawsuit, there is no doubt that Ford would be able to assert a complete defense to that action if the franchisee was in material breach of the franchise agreement. See N.J.[S.A.] 56:10-9.[2]

---

[2] N.J.S.A. 56:10-9 provides "[i]t shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto."

Our review of the record fails to show Ford alleged that any Lincoln dealerships that are members of NJCAR, much less all of them, materially breached their agreements. In these circumstances, Ford's argument does not preclude associational standing to bring an action for declaratory and injunctive relief.

V.

As noted, the trial court's summary judgment ruling in defendant's favor was based on NJCAR's lack of standing. The court did not make findings of fact and conclusions of law with respect to whether there is a genuine issue of material fact in dispute. We decline to exercise original jurisdiction to decide whether summary judgment is appropriate based on the present record. Estate of Doefler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018) ("Although our standard of review from the grant of a motion for summary judgment is de novo . . . our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa."); Price v. Himeji, LLC, 214 N.J. 263, 294 (2013) (Rule 2:10-5 "allow[s an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[s] its use if factfinding is involved.") (alterations in original) (quoting State v. Santos, 210 N.J. 129, 142 (2012)). Accordingly, we remand

11

for the trial court to decide the parties' cross-motions for summary judgment on the merits.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12