236 N.J. Super. 158 (1989)
564 A.2d 1208
PRISMATIC DEVELOPMENT CORP., PLAINTIFF-APPELLANT,
v.
SOMERSET COUNTY BOARD OF CHOSEN FREEHOLDERS AND TURNER CONSTRUCTION COMPANY, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1989.
Decided September 27, 1989.
*159 Before Judges BILDER, ASHBEY and ARNOLD M. STEIN.
Harry L. Garman argued the cause for appellant (Garman & Amdur, attorneys; Harry L. Garman and Sanford Amdur, on the brief).
William E. Ozzard argued the cause for respondent Somerset County Board of Chosen Freeholders (Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys; William E. Ozzard and Arthur D. Fialk, on the brief).
Bruce D. Meller argued the cause for respondent Turner Construction Company, Inc. (Peckar & Abramson, attorneys; Bruce D. Meller and Caroline M. Rossi, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This case involves a public contract for the construction of a new county administration building in Somerville. As in Carney v. Trenton, 235 N.J. Super. 372 (App.Div. 1988), the project is governed by the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. The question presented is whether a prospective prime contractor for a single overall contract may name alternative specialty subcontractors when bidding pursuant to N.J.S.A. 40A:11-16. An examination of the statute and its legislative history convinces us it cannot.

*160 I.
A little background is helpful to an understanding of the problem with which we are dealing. Under the statute, contracts for the erection of a public building involving more than about $7500[1] must be publicly bid. These contracts ordinarily involve the performance of a number of different types of construction as, for example, electrical or plumbing or structural work. In recognition of this fact, the statute provides for the preparation of separate plans and specifications for various components of the finished project. N.J.S.A. 40A:11-16. And similar recognition of varied aspects of the work is accorded by the form in which these projects are carried out. They may be undertaken by a single prime contractor who bids the entire project (a single overall contract) or a group of contractors who separately bid a specialized branch of the work. Ibid.[2]
In the instant case defendant Turner Construction Company, Inc. was the low bidder for a single overall contract for the construction of Somerset County's new administration building.[3] Its bid was $11,950,000. Plaintiff Prismatic Development Corp. submitted a competing bid of $12,475,000, making it the next lowest bidder. Plaintiff brought an action in lieu of prerogative writ to restrain an award to Turner, contending that its bid was fatally defective in that it failed to include a "consent of surety" to the required bid bond and lacked an affidavit of non-collusion, and that it listed multiple prime subcontractors in violation of N.J.S.A. 40A:11-16. In this latter regard, Prismatic made clear it was not the use of multiple *161 subcontractors which gave rise to its objection, but that Turner was not committed to any of them and was free to negotiate arrangements with some or any of those named after the opening of the bids  that the bid listed subcontractors some of whom Turner would not use. Following briefing and oral argument, on August 25, 1989 the trial judge dismissed the complaint, finding the deficiencies did not exist but if they did, they were waiveable and/or nonmaterial and that the submission of alternative subcontractors was statutorily permissible and, moreover, approved by our Carney decision. On appeal plaintiff again contends Turner's bid failed to include a consent of surety and that this was a material non-waiveable deficiency. It also claims error in the trial judge's conclusion that Turner could list multiple subcontractors for the same branch of work, some of whom might not be used.[4] It seeks an award of the contract to itself as the lowest responsible bidder. We accelerated the appeal and entered a consent order staying the execution of a construction agreement pending our decision.
N.J.S.A. 40A:11-16, in pertinent part, provides:
In the preparation of plans and specifications for the erection, alteration or repair of any public building by any contracting unit, when the entire cost of the work will exceed the amount set forth in, or the amount calculated by the Governor pursuant to, section 3 of P.L. 1971, c. 198 (C.40A:11-3), the architect, engineer or other person preparing the plans and specifications may prepare separate plans and specifications for
(1) The plumbing and gas fitting and all kindred work;
(2) Steam power plants, steam and hot water heating and ventilating apparatus and all kindred work;
(3) Electrical work;
(4) Structural steel and ornamental iron work; and
(5) All other work required for the completion of the project.
The contracting unit or its contracting agent shall advertise for and receive, in the manner provided by law, either (a) separate bids for each of the said branches of work, or (b) bids for all the work and materials required to complete the building to be included in a single overall contract, or (c) both. There will be set forth in the bid the name or names of ... all subcontractors to whom the bidder will subcontract the furnishing of plumbing and gas fitting, *162 and all kindred work, and of the steam and hot water heating and ventilating apparatus, steam power plants and kindred work, and electrical work, structural steel and ornamental iron work, each of which subcontractors shall be qualified in accordance with this act. The contracting unit shall require evidence of performance security to be submitted simultaneously with the list of the subcontractors. Evidence of performance security may be supplied by the bidder on behalf of himself and any or all subcontractors, or by each respective subcontractor, or by any combination thereof which results in evidence of performance security equalling, but in no event exceeding, the total amount bid. (N.J.S.A. 40A:11-16)

II.
On this appeal we are required to revisit the problem we considered in Carney, but in a slightly different context. In that case, as we understand it, the contracting unit's bid request contained a number of alternative proposals, all of which were to be provided for in the bids. The prime contractor, in a single overall contract bid, named more than one subcontractor for the same trade but was really required to do so because the selection of the subcontractor depended upon what the contracting unit ultimately decided to do.[5] For example, multiple subcontractors were named for plumbing and HVAC (heating, ventilation and air-conditioning) because one who would perform the bulk of the work did not work on fuel tanks. Id. 235 N.J. Super. at 376. The electrical work was to be divided between one subcontractor who would do fuel tank work and another who would do the remainder. Ibid. In the instant case, the prime contractor, defendant Turner Construction Company, Inc. has named multiple subcontractors within the same trades but intends to use less than all of them. The decision will be made after the bids are opened; Turner will apparently make its deal with the subcontractors after that time. Plaintiff, the unsuccessful bidder, contends this violates N.J.S.A. *163 40A:11-16 and is illegal. Whether this is so is a matter of statutory interpretation.
In interpreting this statute our inquiry must focus on the legislative intent. See State v. Scioscia, 200 N.J. Super. 28, 38 (App.Div. 1985), certif. den. 101 N.J. 277 (1985); City of Newark v. County of Essex, 160 N.J. Super. 105, 113 (App.Div. 1978), aff'd 80 N.J. 143 (1979). Ordinarily legislative history is sparse. See Marotta v. Burgio, 185 N.J. Super. 172, 175-176 (Law Div. 1982). In this case, unusually, the legislative history has spread before us in some detail the intended meaning of the provision we are called upon to consider.
From the date of its original enactment in 1971, the provision requiring that the names of subcontractors be set forth in the bid read much the same as it does now. It originally provided, "There will be set forth in the bid the name or names of, and evidence of performance security from, all subcontractors to whom the bidder will subcontract the furnishing of [the component work], each of which subcontractors shall be qualified in accordance with this act." See Historical Note to N.J.S.A. 40A:11-16. In 1987 the legislature passed Senate Bill No. 1029 which, among other things, amended N.J.S.A. 40A:11-16 to allow a contracting unit to have bidders submit the names of subcontractors after the opening of the bids but prior to the awarding of contracts. This bill as originally passed provided:
The contracting unit may require that the bid set forth the name or names of all subcontractors to whom the bidder will subcontract the furnishing of plumbing and gas fitting, and all kindred work, and of the steam and hot water heating and ventilating apparatus, steam power plants and kindred work, and electrical work, structural steel and ornamental iron work, each of which subcontractors shall be qualified in accordance with this act. In the alternative, the contracting unit may require that the name or names of such subcontractors be submitted by any or all bidders after the opening of bids but prior to the award of the contract. (Emphasis added.)
This amendment would have specifically permitted the procedure Turner employed in its bid. The bill was conditionally vetoed by the Governor, was amended to conform to his recommendations and, as reenacted, was signed to become Chapter 48 *164 of the Laws of 1987. The very issue with which we are confronted was dealt with in the Governor's Reconsideration and Recommendation Statement, a reliable aid to legislative interpretation. See Moore v. Youth Correctional Institute, 230 N.J. Super. 374, 388 (App.Div. 1989). Governor Kean stated:
Current law requires that general contractors bidding on local public construction contracts set forth the name or names of all subcontractors at the time of bid submission. The statute contemplates subcontracts for the furnishing of plumbing and gas fitting, steam power plants, steam and hot water heating and ventilating apparatus, electrical work, and structural steel and ornamental iron work.
I am not convinced that changing this system of bidding to permit subcontractors to be named at a later time would be in the public interest. If a general contractor could wait to name subcontractors until after he has submitted his bid to the local unit of government, then the local unit of government would be unlikely to benefit from any bid shopping undertaken by the general contractor in securing the performance of subcontractors. The purpose of public bidding is to secure performance of high quality for the lowest possible price, and I believe that this objective is furthered by retention of the current statutory scheme whereby subcontractors must be named by general contractors at the time their bids are submitted. This statutory scheme is consistent with the statutes regulating public school construction contracts and State construction contracts.
We had previously expressed similar notions in Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 535 (App.Div. 1983) when we upheld a lower court ruling that the listing of qualified subcontractors was a material-type requirement that could not be waived. See Comment, Bid Shopping and Peddling in the Subcontract Construction Industry, 18 U.C.L.A.L.R. 389, 396-397 (1970) (discussing the evils of post-award bid shopping).
In short, the legislative history of N.J.S.A. 40A:11-16, in that provision's present form, clearly demonstrates the practice sought by Turner was rejected by the Governor in his conditional veto message and by the Legislature in its acceptance of his proposed changes.
In meeting our obligation to respect the legislative intention by interpreting a statute in a common-sense manner which advances the legislative purpose, see State v. Stern, 197 N.J. Super. 49, 53 (App.Div. 1984), we should ordinarily read language *165 in accordance with its plain and ordinary meaning. See Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976). Application of this principle further reinforces our view that that statute prohibits Turner's proposed practice. The statute requires the bidder to list the subcontractors "to whom the bidder will subcontract [the component undertakings]" (emphasis added). Turner's proposed construction would construe the word "will" to mean "may".
To the extent Carney interprets N.J.S.A. 40A:11-16 as permitting the use of multiple subcontractors within the same branch of work, or the use of alternative subcontractors based upon post-bid action by the contracting unit (which was permitted by the bidding specifications), we are in complete agreement with it, essentially for the reasons expressed therein. Id. 235 N.J. Super. at 379. However, to the extent that opinion may be understood as interpreting N.J.S.A. 40A:11-16 as permitting a prime contractor for a single overall contract to name multiple subcontractors for some (or all) of the branches of work and then select between them after the opening of bids, we respectfully demur. The failure to list the subcontractors in the manner prescribed by the statute is material and non-waiveable. See Stano v. Soldo Constr. Co., supra. The award of the contract to Turner must be barred.

III.
In view of our conclusion that the subcontractors must be definitively named in the bid, plaintiff's remaining contention need not be addressed. However, in light of the possibility of further litigation, we note our agreement with the trial judge as to plaintiff's contention with respect to the consent of surety, for the reasons he expressed in his oral decision of August 25, 1989, and further note plaintiff's abandonment of its contention as to an affidavit of non-collusion.

*166 IV.
In its notice for bids, the County reserved the right to reject any and all bids. In the event the low bid made by Turner cannot be awarded, the County seeks to reject all the bids and rebid the contract. This is its right. See Princeton Disposal Serv. v. Tp. of No. Brunswick, 154 N.J. Super. 488, 490 (App.Div. 1977); Cardell v. Tp. of Woodbridge, 115 N.J. Super. 442, 450-451 (App.Div. 1971), certif. den. 60 N.J. 236 (1972); also Cubic Western Data v. New Jersey Turnpike Authority, 468 F. Supp. 59, 70-71 (D.N.J. 1978)
The order of the trial court is reversed. Defendant Somerset is enjoined from awarding the contract to Turner. Prismatic's application for an order requiring the award of the contract to it is denied. The Freeholders of Somerset County may rebid the contract.
NOTES
[1] The threshold amount is adjusted biannually by the Governor. N.J.S.A. 40A:11-3b. Effective July 1, 1989 this sum was $9,200. Undated announcement of Governor Kean adjusting thresholds for the period commencing July 1, 1989.
[2] In the latter case, in the absence of other designation, the public entity has the responsibility for overall coordination. See Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 265 (1982).
[3] Bids were received and opened August 9, 1989.
[4] It has abandoned its claim as to a certificate of non-collusion.
[5] The exact facts in Carney are somewhat difficult to fathom because the bid was apparently required to encompass various additional or alternate work which the city might or might not require, the determination to be made post-bidding.