908 A.2d 237

ALAN O'SHEA AND THE MECHANICAL CONTRACTORS ASSOCI-ATION OF NEW JERSEY, INC., PLAINTIFF–APPELLANTS, v. NEW JERSEY SCHOOLS CONSTRUCTION CORPORATION, NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY, AND THE STATE OF NEW JERSEY, DEFENDANTS–RESPON-DENTS.

Superior Court of New Jersey
Appellate Division

Argued September 13, 2006—Decided October 19, 2006.

*Edward J. Frisch,* argued the cause for appellants (*Lindabury, McCormick & Estabrook,* attorneys; *Mr. Frisch,* of counsel; *Bruce P. Ogden,* on the brief).

*Elaine C. Schwartz,* Deputy Attorney General, argued the cause for respondents (*Anne Milgram,* Acting Attorney General, attorney; *Susan Roop,* Assistant Attorney General, of counsel; *Ms. Schwartz,* on the brief).

The opinion of the court was delivered by

## WINKELSTEIN, J.A.D.

In this appeal from an order dismissing plaintiffs' complaint seeking to enforce defendants' compliance with public bidding laws, the principal issue is whether a subsidiary of a State authority, the New Jersey Schools Construction Corporation (the SCC), may permit a general (or prime) contractor to substitute major trade subcontractors for those listed in the general contractor's bid documents after the bid has been awarded. We conclude that such a practice is contrary to public bidding laws and their underlying policies.[1] Accordingly, we reverse.

Plaintiffs are an association of New Jersey-based mechanical contracting firms and its executive director. The SCC is a subsidiary of the New Jersey Economic Development Authority, a public entity authorized by the Educational Facilities Construction and Financing Act, *N.J.S.A.* 18A:7G–1 to –44, to construct and finance school facilities projects in *Abbott*[2] school districts. *See N.J.S.A.* 18A:7G–5a; Exec. Order No. 24 (2002).

The New Jersey Economic Development Authority Act requires that when the SCC procures contracts, it

shall advertise and receive (1) separate bids for each of the branches of work specified in subsection a. of this section;[3] or (2) bids for all the work and materials required to complete the school facilities project to be included in a single overall contract, *in which case there shall be set forth in the bid the name or names of all subcontractors to whom the bidder will subcontract for the furnishing of any of the work and materials specified in branches (1) through (4) in subsection a. of this section;* or (3) both.

---

[1] This opinion does not affect a general contractor's remedies if a subcontractor breaches after a contract between the general contractor and the subcontractor has been signed.

[2] *See, inter alia, Abbott v. Burke,* 100 *N.J.* 269, 495 A.2d 376 (1985).

[3] The work referred to in subsection a of the statute includes:

(1) the plumbing and gas fitting and all work and materials kindred thereto, (2) the steam and hot water heating and ventilating apparatus, steam power plants and all work and materials kindred thereto, (3) the electrical work, (4) structural steel and miscellaneous iron work and materials . . . .
[*N.J.S.A.* 34:1B–5.7a.]

[*N.J.S.A.* 34:1B–5.7b (emphasis added).]

Thus, the SCC can obtain separate bids from and award separate contracts to certain major trade contractors; enter into a single contract with one general contractor; or a combination of the two. *N.J.S.A.* 34:1B–5.7b(2), (3).

In their complaint in lieu of prerogative writs, plaintiffs, claiming a violation of *N.J.S.A.* 34:1B–5.7b(2), sought mandamus-type relief to compel the SCC to end its practice of permitting general contractors to substitute major trade subcontractors for those the general contractor named in its bidding documents.[4] The bid forms utilized by the SCC require bidders to submit contain a provision stating that the bidder "shall name" all of the subcontractors who will be performing the trade work listed in the bid advertisement and that the bidder is not permitted to substitute subcontractors "prior to execution of the contract." Nevertheless, the form indicates that substitution is still permissible, stating that "[a]ny substitution of subcontractors after the award of contract shall be made only with written approval of the SCC in accordance with the General Conditions."

In the Law Division, the SCC acknowledged that it was permitting prime contractors to substitute subcontractors for those named in their bids, but contended it was within its discretion to do so. The SCC claimed substitutions were made pursuant to a specific written policy it had implemented during the pendency of the instant litigation. Specifically, the policy allowed the SCC to permit subcontractor substitutions where the subcontractor identified in the price proposal was going out of business; refused to perform; refused to adhere to the contract requirements; stated in writing that it was over-extended or over-committed and pro-

---

4 Plaintiffs also asserted that defendants failed to enforce *N.J.S.A.* 18A:7G–37a and c, which require that the contractor, and all subcontractors, must certify, among other things, "that, at the time that the firm is bidding a project, the amount of its bid proposal and the value of all of its outstanding incomplete contracts does not exceed the firm's existing aggregate rating limit." Because the SCC has since recognized its obligation to enforce this provision, we do not address this claim in this opinion.

vided a reasonable explanation for same; or under "any other circumstance where the [the SCC] deems there to be a rational basis for the substitution."

As a result of the implementation of this policy, plaintiffs moved to transfer the case to this court, contending that the policy is a "rule" promulgated by a State administrative agency, and as such, was in violation of the statutory requirements of the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15. *See generally Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 328–38, 478 *A.2d* 742 (1984) (discussing relevant factors to determine if agency action constitutes rule-making). The Law Division judge denied plaintiffs' motion to transfer, and instead dismissed the complaint. The court found that because no particular bidder's rights were impacted by the SCC's adoption of the policy, no case or controversy existed between the parties. The court did not directly address plaintiffs' argument that the SCC did not, under any circumstance, have the discretion to permit a prime contractor to substitute subcontractors following award of the bid.

We first turn to whether the case should have been dismissed because no controversy existed between plaintiffs and defendants. In arriving at its decision, the court reasoned:

> At this time, the [SCC] has exercised its discretion and has in place a subcontractor substitution policy and an uncompleted contracts form for each subcontractor. Although O'Shea argues that there are additional duties the [SCC] should perform, absent some violation that impacts on the rights of a particular bidder; to wit, an aggrieved party, the exercise of that discretion is best left to the agency.

We disagree. Plaintiffs have demonstrated a justiciable controversy. A justiciable controversy exists when "one party definitively asserts legal rights and such rights are positively denied by the other party." *Registrar & Transfer Co. v. Dir., Div. of Taxation,* 157 *N.J.Super.* 532, 539, 385 *A.2d* 268 (Ch.Div. 1978), *rev'd on other grounds,* 166 *N.J.Super.* 75, 76, 398 *A.2d* 1335 (App.Div.1979). It is a controversy "in which a claim of right is asserted against one who has an interest in contesting it." *Black's Law Dictionary* 777 (5th ed. 1979). It is a real controversy, as opposed to one that is hypothetical or abstract. *Ibid.* Here, it is

not disputed that after the contract was awarded, the SCC permitted prime contractors to substitute new subcontractors for those listed in the prime contractor's bidding documents. Plaintiffs seek to preclude the SCC from taking that action. Plaintiffs are not seeking an advisory opinion, but in fact have placed before the court a sharply-focused issue in which the organization's constituent members have a personal stake. The issue has been presented in an adversarial context, and is capable of judicial resolution. Accordingly, the issue is justiciable.

Plaintiffs also have standing to sue. Standing is an aspect of justiciability. *Flast v. Cohen*, 392 *U.S.* 83, 98–99, 101, 88 *S.Ct.* 1942, 1952–53, 20 *L.Ed.*2d 947, 961–62 (1968). While we do not render advisory opinions or function in the abstract, our courts have historically taken a liberal approach to the issue of standing. *See Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y.*, 58 *N.J.* 98, 101, 275 *A.*2d 433 (1971). Standing may be found as long as the parties seeking relief have a sufficient personal stake in the controversy to assure adverseness and the controversy is capable of resolution by the courts. *Id.* at 103–04, 275 *A.*2d 433. Our Supreme Court has recognized the standing of associations to litigate on behalf of their constituencies, *id.* at 106, 275 *A.*2d 433, as well as a taxpayer's right to sue to enforce competitive bidding statutes. *Trap Rock Indus., Inc. v. Kohl*, 59 *N.J.* 471, 479, 284 *A.*2d 161 (1971); *see also Loigman v. Twp. Comm. of Middletown*, 297 *N.J.Super.* 287, 295–96, 687 *A.*2d 1091 (App.Div.1997).

Here, plaintiffs have standing for two reasons. First, they are taxpayers. Second, it is uncontested that members of the association regularly vie for plumbing and HVAC subcontracts for the SCC's school facilities projects. Plaintiffs have therefore demonstrated an interest in the litigation both as taxpayers and as representatives of the organization's constituent members, who have a personal interest in the SCC's bidding procedures. Thus, given plaintiffs' standing and the existence of a justiciable controversy, the complaint should not have been dismissed.

That said, while we could remand to the Law Division for resolution because the judge did not address whether the SCC may under any circumstance permit subcontractor substitutions after the contract has been awarded, we choose to assert our original jurisdiction inasmuch as that issue is a question of law, no facts bearing on that question of law are in dispute, and the issue implicates the public interest.[5] *See R.* 2:10–5; *New Jerseyans For A Death Penalty Moratorium v. N.J. Dep't of Corr.,* 370 *N.J.Super.* 11, 18, 850 *A.*2d 530 (App.Div.2004), *aff'd as modified,* 185 *N.J.* 137, 883 *A.*2d 329 (2005). We therefore turn to the question of whether the SCC may permit a prime contractor to substitute new subcontractors for those the prime contractor listed in its bid.

Plaintiffs contend that *N.J.S.A.* 34:1B–5.7b(2) does not permit substitutions of the bid-named major-trades subcontractors in the post-award/pre-subcontracting period. Defendants argue that neither the statutory provision itself, nor the case law interpreting it, prohibits post-award subcontractor substitution, and that the SCC has the discretion to develop and implement a substitution policy. On balance, we conclude that plaintiffs' position more accurately reflects the statutory language and the policies underlying the public bidding statutes.

"[P]ublic bidding statutes exist for the benefit of taxpayers ... and should be construed with sole reference to the public good." *Borough of Princeton v. Bd. of Chosen Freeholders of Mercer,* 169 *N.J.* 135, 159–60, 777 *A.*2d 19 (2001) (internal quotations omitted). The underlying purpose of public bidding statutes "is to secure the benefits of competition for the public," and the statutes are "to be strictly construed" to achieve that end. *Stano v. Soldo Constr. Co.,* 187 *N.J.Super.* 524, 535, 455 *A.*2d 541

---

[5] In addition, because we have concluded that the SCC may not, by policy or by rule, permit subcontractor substitutions after the contract has been awarded, we need not decide plaintiffs' claim that the SCC's policy constituted improper rulemaking. *See R.* 2:2–3(a)(2) (jurisdiction to determine validity of agency rules lies in the Appellate Division).

(App.Div.1983). Rigid adherence to the public bidding statutes guards against "favoritism, improvidence, extravagance, and corruption." *N.E.R.I. Corp. v. N.J. Highway Auth.*, 147 *N.J.* 223, 236, 686 *A.*2d 328 (1996).

In this case, plaintiffs claim that *N.J.S.A.* 34:1B–5.7b(2), which requires a prime contractor to list in its bid all of the major trade subcontractors with whom the prime will contract for the project being bid, precludes subcontractor substitution after the contract has been awarded. Though no published opinion has directly addressed this issue, our inquiry is informed by our construction of *N.J.S.A.* 40A:11–16, a provision of the Local Public Contracts Law (LPCL), *N.J.S.A.* 40A:11–1 to –51.

*N.J.S.A.* 40A:11–16 says that in a single bid by a prime contractor, there "shall be set forth in the bid the name or names of all subcontractors to whom the bidder will subcontract." This provision contains language identical to that found in *N.J.S.A.* 34:1B–5.7b(2). In construing the former provision, we have concluded that it precludes substitution of subcontractors not named in the bid. *See Gaglioti Contracting, Inc. v. City of Hoboken*, 307 *N.J.Super.* 421, 431, 434–35, 704 *A.*2d 1301 (App.Div.1997); *Prismatic Dev. Corp. v. Somerset County Bd. of Chosen Freeholders*, 236 *N.J.Super.* 158, 163–66, 564 *A.*2d 1208 (App.Div.), *certif. denied*, 118 *N.J.* 205, 570 *A.*2d 965 (1989); *Stano, supra*, 187 *N.J.Super.* at 534, 455 *A.*2d 541.

*Stano* is illustrative. There, the County awarded a lump sum contract to Soldo Construction Company, which listed the names of various subcontractors in its bid. *Stano, supra*, 187 *N.J.Super.* at 529, 455 *A.*2d 541. The plaintiff challenged the bid because one of the subcontractors was not qualified. *Id.* at 529–30, 455 *A.*2d 541. The trial judge agreed and we affirmed. In doing so, we addressed the defendant's argument that a prime contractor could name any company it chose as a subcontractor after the contract was awarded. *Id.* at 534, 455 *A.*2d 541. Rejecting that argument, we reasoned that while *N.J.S.A.* 40A:11–16 does not on its face prohibit substitution of subcontractors, the requirement of the

statute that the subcontractors be listed in the bid would have no meaning under the defendant's interpretation. We reasoned,

> [t]he purpose of bidding statutes is to secure the benefits of competition for the public, and they are to be strictly construed to achieve this end. (citation omitted) If a bidder were able to substitute unlisted subcontractors, he could wait until after being awarded the bid and negotiate for a lower price, the savings from which would accrue to him and not to the public. Thus, a strict interpretation of "all subcontractors to whom the bidder will subcontract" as those subcontractors whom the bidder will actually use is consistent with the manner in which the act has been interpreted.
>
> [*Id.* at 535, 455 *A.*2d 541.]

*See also Clyde M. Lattimer & Son Constr. Co. v. Twp. of Monroe Utils. Auth.,* 370 *N.J.Super.* 130, 138, 850 *A.*2d 601 (App.Div.2004) (noting that *Stano* "made it clear that *N.J.S.A.* 40A:11–16 prohibits the substitution of unnamed subcontractors" under the LPCL).

We came to a similar result in *Prismatic, supra,* 236 *N.J.Super.* 158, 564 *A.*2d 1208. In that case, the prime contractor named multiple subcontractors within the same trades but did not intend to use all of them. *Id.* at 162, 564 *A.*2d 1208. The plaintiff claimed that practice was a violation of *N.J.S.A.* 40A:11–16. *Id.* at 162–63, 564 *A.*2d 1208. We reviewed the legislative history of the subject statute, placing particular emphasis on the 1987 amendment. *Id.* at 163–64, 564 *A.*2d 1208. That amendment, as originally written, would have permitted bidders to submit the names of subcontractors after the opening of the bids but prior to the awarding of contracts. *Id.* at 163, 564 *A.*2d 1208 (citing Senate Bill No. 1029 (1987)). The amendment was, however, conditionally vetoed by Governor Kean, who said that changing the bidding system to permit subcontractors to be named after the bids were opened would not benefit the unit of local government requesting the bids and could result in bid shopping by the general contractor. *Id.* at 164, 564 *A.*2d 1208 (citing Governor's reconsideration and recommendation statements). The statute was then adopted without the challenged language. *Ibid.* In other words, while the proposed language of the amendment would have permitted the procedure employed by the defendant, the statute as adopted did not permit that conduct.

We noted further that given the plain language of *N.J.S.A.* 40A:11–16, which requires a bidder to list the subcontractors " 'to whom the bidder *will* subcontract [the component undertakings],' " the construction of the statute as proposed by the defendant would have changed the word "will" to "may." *Id.* at 164–65, 564 *A.*2d 1208 (quoting *N.J.S.A.* 40A:11–16). We therefore rejected the defendant's position.

We revisited the issue of substitution of subcontractors under the LPCL in *Gaglioti, supra,* 307 *N.J.Super.* 421, 704 *A.*2d 1301. The contractor there failed to include a list of subcontractors with its bid. *Id.* at 424, 704 *A.*2d 1301. We again found that strict compliance with the requirement that a list of subcontractors be submitted with the bid was in the public interest. *Id.* at 431–32, 704 *A.*2d 1301. The failure to submit the list would adversely affect the bidding process and was non-waivable. *Id.* at 434, 704 *A.*2d 1301. We held that requiring a bidder to "submit a list of subcontractors with each bid prevents a general contractor from negotiating or renegotiating with subcontractors after it is awarded the contract." *Id.* at 431, 704 *A.*2d 1301.

A common thread is woven through the fabric of the case law interpreting *N.J.S.A.* 40A:11–16. The statute is strictly construed to require the prime contractor to use the subcontractors listed in the bid documents. This construction gives meaning to the statutory language, fosters competition and decreases the chance of bid shopping. We see no reason why *N.J.S.A.* 34:1B–5.7b(2) should be construed any differently. Both *N.J.S.A.* 34:1B–5.7b(2) and *N.J.S.A.* 40A:11–16 require that the names of all subcontractors to whom the bidder will subcontract be part of the bidding documents. To allow the agency here to permit substitutions after the bid has been awarded would effectively neutralize that requirement.

The public policies underlying bidding by local governments also underly public bidding by the SCC, a State authority. It would be inconsistent to preclude subcontractor substitution by the former, but permit it by the latter.

We are mindful that when a statute is ambiguous, courts traditionally place considerable weight on the construction of the statute by the administrative agency charged with operating under it. *Passaic Daily News v. Blair,* 63 *N.J.* 474, 484, 308 *A.*2d 649 (1973). We generally defer to that agency's interpretation so long as it is not unreasonable. *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992). Nevertheless, given the language of *N.J.S.A.* 34:1B–5.7b(2), which is identical to the language of the LPCL, and the public policies underlying the requirement that the names of the subcontractors be submitted with the bids, the SCC does not have the discretion to permit substitution of subcontractors after the contract has been awarded.

Our conclusion is buttressed by the language of *N.J.S.A.* 18A:7G–37, which requires that both the contractor who bids a school facilities project in New Jersey, as well as "any subcontractors required to be named under [the Educational Facilities Construction and Financing Act] shall, as a condition of bidding, submit a sworn contractor certification regarding qualifications and credentials." *N.J.S.A.* 18A:7G–37a. This statute would have little meaning if the subcontractor named in the bid could be removed by the prime contractor after the bid was awarded.

The need to furnish the names of subcontractors along with the bid of a general contractor is also found in the public bidding statutes of the State government, *N.J.S.A.* 52:32–2b; as well as in the public bidding requirements of other State agencies, including boards of education, *N.J.S.A.* 18A:18A–18; State colleges, *N.J.S.A.* 18A:64–76.1a; county colleges, *N.J.S.A.* 18A:64A–25.25; and the New Jersey Building Authority, *N.J.S.A.* 52:18A–78.11. While the construction of each of these statutes is not before us, defendants' position would lead to inconsistent treatment of bidders by the various State agencies, uncertainty in the contracting community, and would open the door to mischief that could undermine competition and public confidence in the process. *Cf.* Exec. Order No. 37 (2006) (requiring consistency and openness in the procurement of public contracts by all State authorities).

Reversed and remanded to enter judgment consistent with this opinion.