15 A.3d 876 (2011)
419 N.J. Super. 33
STATE of New Jersey, Plaintiff-Respondent,
v.
Ramon A. RODRIGUEZ-ALEJO, Defendant-Appellant.
No. A-0815-09T3.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 2011.
Decided March 25, 2011.
*877 Mollo Law Firm, attorneys for appellant (Albert P. Mollo, of counsel and on the brief).
Peter E. Warshaw, Jr., Acting Monmouth County Prosecutor, attorney for respondent (Carey J. Huff, Assistant Prosecutor, of counsel and on the brief).
Before Judges PAYNE, BAXTER and KOBLITZ.
The opinion of the court was delivered by
KOBLITZ, J.S.C. (temporarily assigned).
Defendant Ramon A. Rodriguez-Alejo was charged with driving while intoxicated, N.J.S.A. 39:4-50; refusal to submit to a breath test, N.J.S.A. 39:4-50.2; possession of an open container in a motor vehicle, N.J.S.A. 39:4-51a; and reckless driving, N.J.S.A. 39:4-96. At trial, the State conceded an inability to convict on the open container charge. The municipal court judge found defendant guilty only of the refusal to submit to a breath test by failing to provide a sufficient breath sample despite defendant's claim that he did not understand the instructions given to him in English.
Defendant was again found guilty at a trial de novo before the Law Division and sentenced to $306 in fines, $33 in costs, a $200 DWI surcharge, a seven-month license suspension and twelve hours in an Intoxicated Driver Resource Center Program. The sentence was stayed pending appeal. On appeal, defendant argues, as he did in both the municipal court and Law Division proceedings, that his limited proficiency in English prevented him from understanding the instructions regarding the breath sample. Additionally, although not specifically raised as a violation of his rights by defendant, he was not read the required portion of the approved instructions regarding the effect of a refusal. Finding defendant was not sufficiently informed of the breathalyzer process, we reverse.
The trial in municipal court proceeded with a Spanish interpreter for defendant. Corporal Douglas Wiatrak of the Middletown Township Police Department testified to the following facts. At 10:45 p.m. on July 22, 2007, he responded to a civilian report of a possibly intoxicated driver hitting a tree. He saw fresh skid marks on the highway in the direction of defendant's car, which was on the shoulder of the road. Wiatrak smelled the odor of a skidding tire as he approached the car, which showed no signs of having been in an accident. Defendant was standing outside smoking a cigar, and five passengers were sitting in the car. Wiatrak and defendant had a short conversation in which defendant responded appropriately to questions but stated that he spoke little English. Wiatrak could not remember if he had to repeat or rephrase the questions so that defendant could understand. Defendant said he was coming from the beach, had consumed two beers, had trouble seeing and skidded off the road while trying to avoid another car. Wiatrak used one of the passengers as an interpreter for a short time.
*878 Wiatrak observed that defendant's eyes were watery and bloodshot with droopy eyelids. Defendant smelled of alcohol and stood with his legs apart and leaned on the car to keep his balance. Wiatrak began administering field sobriety tests, beginning with the horizontal gaze nystagmus (HGN) test, which defendant failed.[1] After that test, defendant indicated he did not understand the instructions for the next test, which was for balance. Wiatrak then placed defendant under arrest for driving while intoxicated. Defendant was able to answer basic questions posed in English to complete an arrest report at the police station.
A videotape of Wiatrak administering the breathalyzer test was admitted into evidence. We reviewed that videotape, which shows Wiatrak reading the standard breathalyzer notification quickly in a monotone, after which defendant says in accented English that he does not understand. After Wiatrak asked defendant if he would submit samples of his breath, defendant responded, "I don't understand," paused and then said "yeah." Wiatrak placed these statements on the standard (refusal) statement form. Wiatrak attempted to use hand gestures and a few words of Spanish in conversing with defendant. Wiatrak pointed to the machine and used the few words of Spanish he knew, such as the word "aquí" ("here") when asking defendant to approach the breathalyzer machine. Wiatrak used hand gestures to mimic blowing into the machine and the words "más" ("more") and "too pequeño" ("small") in trying to communicate that defendant needed to blow harder into the breathalyzer.
Wiatrak had no training regarding how to deal with people who did not speak English, but was "left to handle it as best [he] c[ould]."
With the use of an interpreter, defendant testified to the following facts. He went out with friends on a boat at the marina in Middletown and drank two beers during the day. His eyes hurt him from swimming in salt water earlier that day.
He came to the United States from Cuba in August 2006, less than a year before the arrest.[2] He speaks little English, understanding only "one, two [or] three words[,] but . . . [not] a whole conversation." He took his New Jersey driver's test in Spanish. On cross-examination, defendant said he works two jobs, making shower stalls at a factory during the day and cleaning a building at night, and that his supervisors speak Spanish. Defendant also stated during cross-examination that he always seeks assistance from the same Spanish-speaking banker when doing his banking.
One of his friends acted as an interpreter with the police at first. At the scene, defendant thought he heard another officer speaking Spanish, but when defendant looked to him for help, the officer indicated that he only spoke Italian. Wiatrak read his address and other information from his license, and he agreed to its accuracy, but understood very little said to him in English. *879 He followed the officer's hand gestures when blowing into the breathalyzer.
Relying on our decision in State v. Marquez, the Law Division found defendant guilty of the refusal charge, finding defendant had, "if not a perfect understanding of English, . . . he did understand English to some degree, and then certainly made his responses in English." See State v. Marquez, 408 N.J.Super. 273, 974 A.2d 1092 (App.Div.2009) (upholding a refusal conviction of a defendant who only spoke Spanish where he was read the standard statement in English, finding no requirement that the standard statement be translated), rev'd in part, vacated in part, 202 N.J. 485, 998 A.2d 421 (2010).
On appeal, defendant argues the following:

POINT I: DEFENDANT-APPELLANT IS NOT GUILTY OF N.J.S.A. 39:4-50.2 BECAUSE HE HAS A LIMITED UNDERSTANDING OF ENGLISH AND DID NOT SUFFICIENTLY UNDERSTAND THE REQUEST OR MANNER IN WHICH TO PROVIDE A BREATH SAMPLE

POINT II: THE STATE FAILED TO PROVE A "SHORT SAMPLE"

POINT III: MUNICIPAL JUDGE RELIED ON EVIDENCE NOT PRESENTED AT TRIAL
The instructions given to defendant in English were incomplete. In State v. Schmidt, 414 N.J.Super. 194, 997 A.2d 1092 (App.Div.), certif. granted, 205 N.J. 15, 11 A.3d 373 (2010), we clarified that the second part of the standard form information must be read to a defendant who unequivocally agrees to submit to a breathalyzer but then fails to produce a valid sample. Id. at 202-03, 997 A.2d 1092. The second portion of the standard form information states:
I have previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of breath samples and do not give you a right to refuse to give, or delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. If you (1) do not respond to my question about submitting breath samples; or (2) tell me that you refuse to answer this question because you have a right to remain silent or first wish to consult with an attorney, physician or any other person; or (3) tell me that you will not submit breath samples because you have a right to remain silent or first wish to consult with an attorney, physician, or any other person, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
[Id. at 200, 997 A.2d 1092 (quoting State v. Widmaier, 157 N.J. 475, 484-85, 724 A.2d 241 (1999)).]
That portion of the standard instructions was not read to defendant. Our decision in Schmidt post-dates this appeal and thus was not raised specifically by defendant. His claim that he "did not sufficiently understand the request or manner in which to provide a breath sample" adequately raises the issue resolved by our holding in Schmidt.
We need not consider principles of retroactivity with regard to our decision in Schmidt. The Supreme Court stated in State v. Feal:
The threshold retroactivity question is always the samewhether a new rule of law has been announced.

*880 A case announces a new rule of law for retroactivity purposes if there is a "`sudden and generally unanticipated repudiation of a long-standing practice.'" A new rule exists if "`it breaks new ground or imposes a new obligation on the States or the Federal Government. . . [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final.'"
[State v. Feal, 194 N.J. 293, 307-08, 944 A.2d 599 (2008) (internal citations omitted).]
Before we decided Schmidt, the reading of the second provision was required when a defendant's response was ambiguous or conditional. Widmaier, supra, 157 N.J. at 497-98, 724 A.2d 241. Because Schmidt did not create a new rule of law but only clarified that supplying an insufficient breath sample constitutes an ambiguous agreement to provide a sample, it is applicable to defendant's case, which was pending on direct appeal when it was decided.
The Court recently stated in State v. Marquez,
In essence, reading the standard statement to motorists in a language they do not speak is akin to not reading the statement at all. The latter scenario renders a conviction defective. See [State v.] Duffy, 348 N.J.Super. [609,] 612-13, [792 A.2d 555 (App.Div.2002)]. It makes no sense that English speakers will be acquitted if incomplete warnings are read to them in English, see ibid., yet foreign-language speakers can be punished on the basis of empty warnings that fail to inform them. Such an approach is not faithful to the text of section 50.2(e).
. . . .
Relying on the plain language of section 50.2(e), the Legislature's reasons for adding that section, and prior case law on point, we find that to "inform," within the meaning of the implied consent and refusal statutes, is to convey information in a language the person speaks or understands.
. . . .
Defendants who claim that they do not speak or understand English must bear the burden of production and persuasion on that issue. See [State v.] Leavitt, 107 N.J. [534,] 542 [527 A.2d 403 (1987)] (explaining that defendant should bear burden of persuasion to establish claim of confusion without resolving whether claim may be asserted); State v. Sherwin, 236 N.J.Super. 510, 518 [566 A.2d 536] (App.Div.1989) (noting defendant failed to offer affirmative evidence of confusion, "much less carr[y] his burden of persuasion on the issue"). That information is peculiarly within the possession of the defendant, not the State. Cf. [State v.] Kim, 412 N.J.Super. [260,] 269 [989 A.2d 864 (App.Div. 2010)]. In addition, this approach will help separate feigned claims from real ones.
[202 N.J. 485, 508-14, 998 A.2d 421 (2010).]
We have the ability to make factual findings when necessary on appeal. Pressler & Verniero, Current N.J. Court Rules, comment on R. 2:10-5 (2011). See O'Shea v. N.J. Schools Constr. Corp., 388 N.J.Super. 312, 319, 908 A.2d 237 (App.Div.2006). Defendant testified that he spoke little English. He had recently arrived from a Spanish-speaking country and works with Spanish-speaking supervisors. He immediately informed the arresting officer that he spoke little English, and the officers attempted to assist communication by using a lay interpreter, hand signals and a few words of Spanish. Understanding the breathalyzer instructions requires greater *881 language fluency than acknowledging a home address or supplying a phone number. In Judge Fisher's concurrence in State v. Kim, supra, he endorsed the rule of law subsequently announced by the Court in Marquez, stating:
Many persons may be able to speak or understand a few rudimentary phrases in languages other than their own. But, just because a person may be able to express greetings or order a cup of coffee in an unfamiliar language does not necessarily mean that the person may be able to understand legal rights and obligations expressed in a less than familiar language.
[Kim, supra, 412 N.J.Super. at 272 n. 1, 989 A.2d 864 (Fisher, C., concurring).]
We find under these circumstances that defendant has met the burden of production and persuasion as to his limited knowledge of English. Although the Law Division and the municipal court found that defendant had some knowledge of English, neither found that he knew sufficient English to understand the breathalyzer instructions. The first portion of the instructions on the standard statement form, which must always be read prior to administering a breathalyzer test, is lengthy and requires English fluency to be understood. The instructions prepared by the Director of the Division of Motor Vehicles pursuant to N.J.S.A. 39:4-50.2(e), revised and effective April 26, 2004, read as follows:
1. You have been arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs, or with a blood alcohol concentration at, or above, that permitted by law.
2. The law requires you to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
3. A record of the taking of the samples, including the date, time, and results, will be made. Upon your request, a copy of that record will be made available to you.
4. Any warnings previously given to you concerning your right to remain silent and your right to consult with an attorney, do not apply to the taking of breath samples, and do not give you the right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. You have no legal right to have an attorney, physician, or anyone else present, for the purpose of taking breath samples.
5. After you have provided samples of your breath for chemical testing, at your own expense, you have the right to have a person or physician of your own selection, and at your own expense, take independent samples and conduct independent chemical tests of your breath, urine, or blood.
6. If you refuse to provide samples of your breath you will be issued a separate summons for this refusal.
7. Any response that is ambiguous or conditional, in any respect, to your giving consent to the taking of breath samples will be treated as a refusal to submit to breath testing.
8. According to law, if a court of law finds you guilty of refusing to submit to chemical tests of your breath, then your license to operate a motor vehicle will be revoked, by the court, for a period of no less than seven months, but no more than 20 years. The Court will also fine you a sum of no less than $300, and no more than $2,000 for your refusal conviction.
9. Any license suspension or revocation for a refusal conviction may be independent *882 of any license suspension or revocation imposed for any related offense.
10. If you are convicted of refusing to submit to chemical tests of your breath, you will be referred, by the Court, to an Intoxicated Driver Resource Center, and you will be required to satisfy the requirements of that Center in the same manner as if you had been convicted of a violation of N.J.S.A. 39:4-50, or you will be subject to penalties for failure to do so.
11. I repeat, you are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Now, will you submit the samples of your breath?
If the rule pronounced in Marquez is applied to these facts, these breathalyzer instructions should have been read to defendant in Spanish.
The holding in Marquez announced a "new rule" while defendant's case was pending on direct appeal. Marquez expanded pre-existing requirements regarding the warnings given by law enforcement pursuant to the administration of breathalyzer tests by requiring law enforcement to read the required warnings in a language that the defendant understands. Marquez, supra, 202 N.J. at 507, 998 A.2d 421. "Our Supreme Court has traditionally applied new rules of criminal practice and procedure at least to cases in the pipeline existing at the time." State v. Gaitan, ___ N.J.Super. ___, ___, ___ A.3d ___ (App.Div.2011) (citing as an example State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005), where the Court eliminated presumptive term sentences and awarded its decision pipeline retroactivity). In State v. Gaitan, we afforded pipeline retroactivity to the rule requiring that deportation consequences of a guilty plea be explained to criminal defendants, as set forth in Padilla v. Kentucky, ___ U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) and State v. Nuñez-Valdéz, 200 N.J. 129, 975 A.2d 418 (2009). Although defendant in this case was not convicted of a crime, "the loss of driving privileges ... constitutes a consequence of magnitude." State v. Moran, 202 N.J. 311, 325, 997 A.2d 210 (2010). Thus, the holding in Marquez calls for a criminal retroactivity analysis.
Courts have four options regarding retroactive application of a new rule of criminal procedure:
[A court] may ... apply the new rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. [State v. Burstein, 85 N.J. 394,] 402-03 [427 A.2d 525 (1981)]. Alternatively, the [c]ourt may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth. Id. at 403 [427 A.2d 525]. A third option is to give the new rule "pipeline retroactivity," rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Ibid. Finally, the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgments have been entered and all other avenues of appeal have been exhausted. Ibid.

[State v. Knight, 145 N.J. 233, 249, 678 A.2d 642 (1996).]
In determining whether retroactivity should be applied, a three-pronged analysis is employed. State v. Purnell, 161 N.J. 44, 54, 735 A.2d 513 (1999) (citing Knight, supra, 145 N.J. at 252-58, 678 A.2d 642). The factors to be considered are: (1) the purpose to be served by the new rule; (2) the degree of reliance by those who administered the prior rule of *883 law; and (3) the impact of retroactive application on the administration of justice. State v. Afanador, 151 N.J. 41, 57, 697 A.2d 529 (1997); Knight, supra, 145 N.J. at 249, 678 A.2d 642. The Court has clarified that "those factors are not of equal weight, as the first factor, the purpose of the new rule, is often the pivotal consideration[.]" State v. Dock, 205 N.J. 237, 255, 15 A.3d 1 (2011) (where the Court did not accord full retroactivity to the new rule set forth in State v. Artwell, 177 N.J. 526, 832 A.2d 295 (2003), banning restraints on incarcerated defense witnesses while on the stand) (quoting State v. Cummings, 184 N.J. 84, 97, 875 A.2d 906 (2005)) (internal quotation marks omitted).
With regard to the first retroactivity factor, the Court's decision in Marquez is aimed at ensuring that defendants understand the consequences of refusing to submit to a breathalyzer test and understand that an ambiguous or conditional response will be deemed a refusal.
The second factor focuses on whether the State administered the old rule in "`good faith reliance [on] then-prevailing constitutional norms.'" Feal, supra, 194 N.J. at 311, 944 A.2d 599 (quoting State v. Purnell, 161 N.J. 44, 55, 735 A.2d 513 (1999)). Before Marquez was decided, law enforcement was only required to read breathalyzer warnings in English regardless of whether or not the defendant could understand English. As Wiatrak testified, no organized efforts were made by the Middletown police to accommodate Spanish-speaking drivers, although the New Jersey driver's test is given in Spanish. Although law enforcement relied in good faith on the law as it existed before Marquez, that does not preclude us from affording the new rule pipeline retroactivity. See Natale, supra, 184 N.J. at 494, 878 A.2d 724.
With regard to the final factor, the effect the decision would have on the administration of justice, in Marquez the Court directed the Attorney General in conjunction with the Motor Vehicle Commission "to develop methods to translate and communicate the standard statement to motorists who do not speak English." Marquez, supra, 202 N.J. at 512, 998 A.2d 421. Moreover, before the Court decided Marquez, the Attorney General had already "arranged for certified translated versions of the standard statement to be preparedin both written and audio formin the nine foreign languages in which the MVC offers the written driver's test, namely, Arabic, Chinese (Mandarin), French, Japanese, Korean, Polish, Portuguese, Russian, and Spanish." Ibid. Applying the rule from Marquez to those cases on direct appeal "would neither `be chaotic' nor `overwhelm our courts.'" Knight, supra, 145 N.J. at 257, 678 A.2d 642 (quoting State v. Catania, 85 N.J. 418, 447, 427 A.2d 537 (1981)). As the Court noted, during the 2007-08 court year, "87,766 court events required translation services in 81 languages[,]" and Spanish translations accounted for eighty-five percent of these "translated sessions." Marquez, supra, 202 N.J. at 510, 998 A.2d 421.
We find that giving the decision in Marquez pipeline retroactive application is "just and consonant with public policy." State v. Nash, 64 N.J. 464, 469, 317 A.2d 689 (1974). Neither the purpose of the rule, reliance on the law preceding the decisions, nor administration-of-justice considerations justify limiting its application to cases arising after the decision was announced.
We do not address defendant's remaining points in light of our agreement with his first argument.
Reversed.
NOTES
[1] See State v. Doriguzzi, 334 N.J.Super. 530, 536-38, 760 A.2d 336 (App.Div.2000) (explaining that HGN tests are not generally accepted by the scientific community).
[2] Although the Law Division noted that defendant had been in the United States for two years at the time of trial, the length of time defendant was in the United States and thus exposed to English subsequent to his arrest is irrelevant in determining whether or not he understood the instructions given to him in English at the time of his arrest. In any event, the amount of time spent in this country does not necessarily correlate with knowledge of English for individuals like defendant who conduct their work and social activities in their native language.