**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3088-18T1

COUNTY OF HUDSON,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY
OFFICE OF THE STATE
COMPTROLLER,

    Defendant-Respondent.

_____

        Argued September 29, 2020 – Decided December 30, 2020

        Before Judges Gooden Brown and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, C-000199-18.

        Cindy Nan Vogelman argued the cause for appellant (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Cindy Nan Vogelman, of counsel and on the briefs; Qing H. Guo, on the briefs).

        Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Beth Leigh Mitchell, Assistant Attorney General, on the brief).

PER CURIAM

Plaintiff County of Hudson appeals from the March 15, 2019 order of the Chancery Division transferring this matter to this court pursuant to our exclusive jurisdiction to review plaintiff's challenge to a final agency decision of defendant State Comptroller. We dismiss the appeal for want of justiciability.

I.

This matter concerns the statutory authority of the State Comptroller with respect to the procurement of contracts by local public entities. Review of the relevant statutory provisions is necessary to put the facts in context.

The State Comptroller, an executive branch officer, is authorized to "monitor the process of soliciting proposals for, and the process of awarding, contracts made by . . . units of local government . . . that involve a significant . . . expenditure of funds . . . ." N.J.S.A. 52:15C-7(b). To facilitate this authority

> [a] contracting unit shall inform the State Comptroller in writing . . . of the commencement of any procurement process involving . . . an expenditure of $10,000,000 or more at the earliest time practicable . . . but no later than the time the contracting unit commences preparation of any . . . bid specification or request for proposal . . . .
>
> [N.J.S.A. 52:15C-10(b)(1).]

2

Such notification triggers a thirty-day pause in the procurement process:

> [u]nless waived by the State Comptroller upon request from the contracting unit, at least 30 days shall elapse from the time the contracting unit informs the State Comptroller . . . and the time the contracting unit may issue any public advertising, notice of availability of a request for proposals or any other public or private solicitation of a contract for a procurement . . . in order that the State Comptroller may complete a review that may be undertaken pursuant to [N.J.S.A. 52:15C-10(b)(4)].
>
> [N.J.S.A. 52:15C-10(b)(2).]

Once the contracting unit gives the State Comptroller information and documents concerning the proposed procurement, "the State Comptroller may review such submission and provide a written determination to the contracting unit regarding whether the procurement process complies with applicable public contracting laws, rules, and regulations." N.J.S.A. 52:15C-10(b)(4).

> If the State Comptroller determines that the procurement process does not comply with applicable public contracting laws, rules, and regulations, the State Comptroller shall direct the contracting unit not to proceed with the procurement. In such an instance, the State Comptroller shall state the reasons for such determination and may include in its determination guidance to the contracting unit regarding an appropriate procurement process.
>
> [Ibid.]

A-3088-18T1

"A contracting unit may proceed with a planned procurement . . . after expiration of the 30-day period or the granting of a wavier" by the State Comptroller "unless it receives a written determination not to proceed from the State Comptroller within 15 business days of the date the contracting unit provided written notice to the State Comptroller . . . ." Ibid.

Hudson County is a local government unit whose contract procurement practices are subject to the State Comptroller's review. N.J.S.A. 52:15C-10(a). On May 1, 2018, the county sent contract specifications to ten preselected vendors soliciting proposals for the medical health care management, mental health care management, and related fiscal management at the Hudson County Correctional Center (HCCC). The specifications indicate the county sought not only the professional services of physicians and other medical personnel, but also related fiscal and administrative services to provide all functions of a health care facility within the HCCC. The county did not publicly advertise that it was issuing the contract specifications or provide a means by which potential bidders, other than the ten preselected vendors, could obtain a copy of the specifications.

On May 14, 2018, the county wrote to the State Comptroller informing him for the first time that it had solicited contract proposals from ten preselected

vendors and that it would not engage in competitive bidding for the services it sought at the HCCC. According to the county, neither competitive contracting nor public bidding were necessary because the services sought in the contract were professional in nature pursuant to N.J.S.A. 40A:11-2(6). The county stated that it expected the contract value to exceed $10 million and that it intended to select a vendor and subsequently negotiate a contract with that vendor. The county was expecting responses from the preselected vendors by June 11, 2018.

The county wrote to the State Comptroller again on May 24, 2018, stating that an emergent need existed to replace the then-existing contract for health care services at the HCCC. The County requested that the State Comptroller waive his review of the contract specifications pursuant to N.J.S.A. 52:15C-10(b). Alternatively, the county offered to postpone the June 11, 2018 contract proposal due date.

On May 31, 2018, a representative of the State Comptroller replied in writing, noting the county's failure to comply with the notice provisions of N.J.S.A. 52:15C-10(b)(1), and acknowledging the urgent nature of the procurement due to recent inmate and detainee deaths. The letter stated that in light of those considerations, the State Comptroller would not review the procurement process and would instead conduct a post-award contract review.

Although the State Comptroller did not stop the procurement process from proceeding, the letter noted that the county's characterization of the contract as being one for professional services may be in conflict with N.J.S.A. 40A:11-15, which requires contracts for professional services not exceed twelve months.

In a July 30, 2018 letter, the county advised the State Comptroller that on July 12, 2018, the Hudson County Board of Chosen Freeholders[1] approved a resolution awarding a one-year contract to Correct Care Solutions (CCS) for a term of July 16, 2018 through July 17, 2019, at a cost of $7,675,073.60, with extensions for two additional one-year periods at prices established through the procurement.[2] The county included with its correspondence documentation for the State Comptroller's post-award review. The county requested the State Comptroller issue an advisory opinion as to: (1) whether the county's contract with CCS was one for professional services; and (2) whether the duration of the contract was permissible. The county stated that "in the event a consensus could not be reached on these issues," it would file a declaratory judgment action.

---

[1] Effective January 1, 2021, the State's Boards of Chosen Freeholders have been renamed Boards of County Commissioners. L. 2020, c. 67.

[2] Although the CCS contract was intended to begin on July 16, 2018, a transition period in which the prior vendor was paid for the provision of health care services at the HCCC delayed the starting date of the CCS contract to October 1, 2018. The initial one-year term ended September 30, 2019.

On October 15, 2018, the State Comptroller issued a letter neither approving nor disapproving the county's contract with CCS. The letter, however, explained in detail how the procurement process did not comply with the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -39. The letter also provided guidance for similar future procurements and the State Comptroller offered to work cooperatively with the county to structure future procurements in a manner consistent with the LPCL, as contemplated by N.J.S.A. 52:15C-10(b).

Specifically, the State Comptroller stated that designating the contract as one for professional services yet bidding it with an extension of more than one year was inconsistent with N.J.S.A. 40A:11-15. In addition, the State Comptroller explained that given the nature of the CCS contract the county should have either: (1) publicly bid and awarded to the lowest responsible bidder under N.J.S.A. 40A:11-4, for a term of up to three years under N.J.S.A. 40A:11-15(29); or (2) issued a request for proposals under N.J.S.A. 40A:11-4.1, -4.1(h), and -4.2, and awarded a contract for up to five years through the competitive bidding process.

On December 26, 2018, the county filed a complaint in the Chancery Division seeking a declaratory judgment under the Declaratory Judgment Act

(DJA), N.J.S.A. 2A:16-50 to -62 and Rule 4:42-3, that the CCS contract is a professional services contract that may extend for a term of up to three years. The State Comptroller moved to dismiss the complaint, arguing the county lacked standing because it had no actual injury, there was no adversity between the county and the State Comptroller, and because the county, in effect, sought a writ of mandamus directing the State Comptroller to retroactively approve the county's procurement of the CCS contract. The State Comptroller also argued that to the extent that there was anything justiciable in the matter, plaintiff sought judicial review of the State Comptroller's October 15, 2018 letter as a final agency decision, agency action, or agency inaction and should have filed its claims in this court under its exclusive jurisdiction pursuant to Rule 2:2-3(a)(2).[3]

On March 15, 2019, the trial court issued an oral opinion, declining to issue a declaratory judgment and concluding that "[t]he crux of the matter presented here is whether the cause of action pled in the plaintiff's complaint requires this [c]ourt to review the action of a State administrative agency." The trial court concluded that because plaintiff challenged a "final decision" of the

---

[3] The State Comptroller also argued that if the trial court did not transfer the matter to this court, venue was proper in the Mercer Vicinage, where the State Comptroller's office is located.

State Comptroller as to whether the county could "contract with a healthcare provider under the professional services exception," this court had exclusive jurisdiction over plaintiff's claims. The trial court held that the county could not circumvent this court's exclusive jurisdiction by instituting an action under the DJA. Thus, the court found, transfer of plaintiff's claims to this court was necessary. A March 15, 2019 order memorializes the court's decision.

This appeal followed. The county raises the following arguments.

> POINT I
>
> THE COUNTY MAY AWARD A PROFESSIONAL SERVICES CONTRACT FOR THE PROVISION OF MEDICAL, MENTAL HEALTH AND ANCILLARY SERVICES WITHOUT A PUBLIC BID IN ACCORDANCE WITH N.J.S.A. 40A:11-5.
>
> POINT II
>
> THE COUNTY MAY AWARD A PROFESSIONAL SERVICES CONTRACT FOR THE PROVISION OF MEDICAL, MENTAL HEALTH AND ANCILLARY SERVICES FOR UP TO THREE YEARS IN ACCORDANCE WITH N.J.S.A. 40A:11-15(29).
>
> POINT III
>
> THE [STATE COMPTROLLER'S] OCTOBER 15, 2018 LETTER WAS NOT A FINAL AGENCY DECISION.

Our authority is limited to the adjudication of "actual cases and controversies. Actions that are essentially requests for advisory opinions will be dismissed." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:6-2 (Gann 2020); Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005). "The prohibition on advisory opinions prevents courts 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" In re N.J. Fireman's Ass'n, 230 N.J. 258, 275 (2017) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

"A justiciable controversy exists when 'one party definitively asserts legal rights and such rights are positively denied by the other party.'" O'Shea v. N.J. Schools Constr. Corp., 388 N.J. Super. 312, 317 (App. Div. 2006) (quoting Registrar & Transfer Co. v. Dir., Div. of Taxation, 157 N.J. Super. 532, 539 (Ch. Div. 1978), rev'd on other grounds, 166 N.J. Super. 75, 76 (App. Div. 1979)). "It is a controversy 'in which a claim of right is asserted against one who has an interest in contesting it.'" Ibid. (quoting Black's Law Dictionary 777 (5th ed. 1979)). The controversy must be real, not hypothetical or abstract. Ibid.

These considerations apply whether we consider plaintiff's claims to be a challenge to a final agency decision of the State Comptroller, as did the trial

court, or as claim for relief under the DJA. See In re N.J. Fireman's Ass'n, 230 N.J. at 275 (holding that under the DJA, courts are "forbidden from declaring the rights or status of parties upon a state of facts which are future, contingent and uncertain.") (internal quotations and alterations omitted). "It follows, then, that a declaratory judgment claim is ripe for adjudication only when there is an actual controversy, meaning that the facts present 'concrete contested issues conclusively affecting' the parties' adverse interests." Ibid. (quoting N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 241 (1949) (citation omitted)).

The county cannot allege any harm arising from the State Comptroller's October 15, 2018 letter. The State Comptroller did not prevent the county from awarding the contract to CCS, or twice renewing the agreement for one-year terms. The State Comptroller's opinion that the procurement process for the CCS contract violated the LCPL has had no effect on the validity of the agreement. No party has sought to vitiate the contract. The county is in no different position than it would have been had the State Comptroller either found that the procurement process complied with the law or had not acted at all.

Nor does the county have a concrete claim against the State Comptroller that can be resolved by our review of the October 15, 2018 letter. The county argues that a judicial decision with respect to whether the procurement process

complied with the LCPL would provide the legal clarity necessary for its anticipated procurement of a new contract after the CCS agreement expires in September 2021.[4] We find this argument unpersuasive for two reasons. First, a decision concerning the validity of the procurement process for the CCS contract will not obviate the county's obligation to comply with the notice provisions of N.J.S.A. 52:15C-10(b) when it contemplates procuring a new agreement. Nor will a decision with respect to the procurement process for the CCS contract necessarily apply to the procurement process for a new contract, which will have its own specifications. It is the details of the specification for the new contract that will be reviewed by the State Comptroller to determine compliance with the LCPL, not the provisions of the CCS contract.

Second, and more importantly, the Legislature has established a statutory procedure for the county to obtain the State Comptroller's review, approval, and guidance on procuring its contracts of significant cost. Uncertainty with respect to the CCS contract, if such uncertainty exists, is the result of the county's failure to fulfill its statutory obligation to provide timely notice of its intended procurement to the State Comptroller. There is no doubt that the county is now aware that it is required to provide the State Comptroller notice "at the earliest

---

[4] The contract was twice extended for one-year terms.

time practicable," N.J.S.A. 52:15C-10(b)(1), of its intention to procure a new contract after expiration of the CCS agreement. We must respect the legislative preference to have the county's procurement process for a new agreement reviewed in the first instance by the State Comptroller. The statute contemplates a cooperative effort between the local government entity and the State Comptroller to ensure compliance with the LCPL. In the event that those efforts do not result in the State Comptroller's approval of the county's intended procurement process for a new contract, the county may at that time seek judicial relief.

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3088-18T1